UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Chardles O. Ogindo,

                            Plaintiff,

      v.                                    07-CV-1322

Lois DeFleur, Individually and in her official
capacity as President of Binghamton University;
John J. Eisch, Individually and in his official
capacity as Professor of Chemistry at Binghamton
University and Plaintiff's advisor; David
Doetschman, Individually and in his official
capacity as the Chemistry Chair person;
Alistair Lees, Individually and in his official
capacity as the Chemistry chair that succeeded
David Doetschman; and Wayne Jones, Individually
and in his official capacity as the Director of the
Graduate Program Committee,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Charles Ogindo commenced the instant asserting various claims including discrimination, violation of his constitutional right, copyright infringement, and patent infringement, breach of contract, promissory estoppel, and fraud, arising out of his constructive discharge from the Binghamton University doctoral program and dismissal from Binghamton University.  Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

**I.      FACTS**

The following facts are taken from Plaintiff's Amended Complaint and, for purposes of the instant motion, are assumed to be true.

In January 2002, Plaintiff was accepted into Binghamton University's doctoral program in the Department of Chemistry.  In December 2002, Plaintiff was invited by Defendant John Eisch to join a research group for doctoral dissertation research.  Eisch verbally assured Plaintiff that he "would be able to defend his dissertation in December of 2005" and that "obtaining publications would not be difficult."  Am. Compl. at ¶ 15.

Plaintiff received positive appraisals towards his May 2006 graduation date. Plaintiff "passed his coursework, cumulative examinations and oral examinations, and was admitted to doctoral candidacy as an ABD (All But Dissertation) when he submitted his dissertation prospectus" in March 2004.  Id. at ¶ 16.  Thereafter, Eisch assigned Plaintiff to duplicate certain experiments.  Plaintiff followed Eisch's direction, but was unable to obtain the same results as the prior student experimenter.  Id. at ¶ 17.  According to Plaintiff, his experiments "disproved Eisch's hypotheis as written up in Jane Sohng's Honors thesis as well as disproving numerous other experiments along the same lines previously published by Defendant Eisch."  Id.  Plaintiff alleges that "Eischs encouraged [Plaintiff] to forge data, which [Plaintiff] refused to do."

"[I]n the course of his experimentation, [Plaintiff] discovered a novel route to metal carbene complexes and a novel catalyst, trinuclear nickel carbene species, with . . . a combined possible market value of over $200 million. . . ."  Id. at ¶ 18.  In April 2005, Plaintiff completed his doctoral research proposals.  Plaintiff "presented to Eisch by interpretation a proposed experiment which would be a route to the Grubbs catalyst."  Id. at ¶ 19.  Eisch

would not allow Plaintiff to perform the experiment.  Shortly thereafter, Eisch removed Plaintiff from the project and assigned him to a different project.  In the new experiments, Plaintiff did not get the same results as others had.  By letter dated December 14, 2005, Eisch terminated Plaintiff's doctoral dissertation research "on the . . . ground that [Plaintiff] . . . lacked aptitude."  Id. at ¶ 21.  Plaintiff was, thereafter, returned to the laboratory in a probationary status.

In January 2006, Plaintiff was prevented from taking a position at SUNY-Oneonta because Eisch threatened "that Plaintiff would not complete his degree if he took the position."  Id. at ¶ 23.  Nevertheless, by letter dated February 19, 2006, Eisch praised Plaintifif's work and promised to expedite Plaintiff's doctoral studies "as expeditiously as possible."  Id. at ¶ 24.

In June 2006, Eisch "abruptly terminated [Plaintiff], citing his performance on the cleavage experiment.  The Defendant removed the Plaintiff from the laboratory and confiscated his laboratory notebooks et al."  Id. at ¶ 25.  "Eisch went on to block all publications by Plaintiff, as well as any presentations in professional seminars. . . . In addition, Eisch himself published a corrective paper on the cleavage experiements without including Plaintiff as a co-author or giving him any credit. . . ."  Id. at ¶ 26.

In August 2006, Plaintiff was "for all intent and purposes dismissed from the doctoral program.  On or about March 26, 2008, [Plaintiff] was officially dismissed and/or disenrolled from Binghamton University."  Id. at ¶ 30.

As a result of the foregoing, Plaintiff commenced the instant action asserting claims of: race-based discrimination (First Cause of Action); discrimination on account of national origin (First Cause of Action); retaliation in violation of 42 U.S.C. §§ 1981 and 1982 and 20

U.S.C. § 1681(a) (Second Cause of Action); substantive and procedural due process violations (Third Cause of Action); copyright infringement (Fourth Cause of Action); patent infringement (Fifth Cause of Action); breach of implied contract (Sixth Cause of Action); promissory estoppel (Seventh Cause of Action); educational malpractice (Eighth Cause of Action); and fraud (Ninth Cause of Action).  Presently before the Court is Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(1) and/or (6) seeking dismissal of the Complaint in its entirety.

## II.     STANDARD OF REVIEW

A motion brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims pleaded in a case.  On a motion to dismiss, all factual allegations in the complaint are accepted as true, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed.2d 517 (1993), and the Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007).  As such, the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., at 1965; see Barkley v. Olympia Mortgage Co., 2007 WL 2437810, at * 9 (E.D.N.Y. Aug. 22, 2007).

## III.    DISCUSSION

### a.     Discrimination on Account of Race and/or National Origin

Defendants move to dismiss the discrimination claims on the grounds that: (1) the Complaint lacks sufficient facts alleging that other students were similarly situated to Plaintiff in all material aspects to sustain a claim of selective treatment; (2) the Complaint fails to set

forth any facts upon which it could be found that Defendants acted with an impermissible motive; and (3) there are no allegations of personal involvement by Defendant DeFleur.

Although Defendants' contentions may prove to be true, their arguments impose too high of a standard on a motion to dismiss. To survive a motion to dismiss, Plaintiff "need not allege 'specific facts establishing a prima facie case of discrimination.'" Boykin v. Keycorp, 521 F.3d 202, 212 (2d Cir. 2008) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992 (2002)). Similarly, Plaintiff need not allege facts demonstrating discriminatory animus. Boykin, 521 F.3d at 215. "[I]t is sufficient that [Plaintiff's] complaint states that . . . [he is Nigerian], describes [Defendants'] actions with respect to [his dismissal from Binghamton University] and alleges that [he] was treated differently from similarly situated . . . [students] because of [his] race [and national origin]." Id. Plaintiff's Complaint sufficiently alleges facts that put Defendants on notice of the basis for his claim and the grounds upon which it rests and render the discrimination claim plausible. See Boykin, 521 F.3d at 213. Plaintiff's Amended Complaint alleges that Plaintiff was the victim of adverse treatment by Defendants (terminated from the doctoral program), points to instances where other non-Nigerian students appear to have been treated more favorably,[1] and further attributes statements to certain Defendants that could be found to evidence a discriminatory motive. This is sufficient to state a plausible claim of discrimination on account of race or national origin. Whether Plaintiff's allegations have any evidentiary support, whether the

---

[1] Plaintiff contends that white students received summer stipends, whereas he did not; Eisch stopped Plaintiff from publishing and making presentations while Eisch engaged in co-authorship with white students; Eisch prevented Plaintiff from obtaining a teaching position, whereas a white student received a teaching position; and Plaintiff's dissertation was sent for outside expert review, whereas no white students had their dissertations sent out for outside review.

other non-Nigerian students were similarly situated, and whether Defendants acted with a discriminatory animus are best determined at trial or on a motion for summary judgment.

Plaintiff's Complaint fails, however, as to Defendant DeFleur. There can be no liability under 42 U.S.C. § 1983 unless a Defendant is found to have been personally involved. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Plaintiff's Complaint fails to make sufficient allegations suggesting any personal involvement as to Defendant DeFleur. Accordingly, the claims as to her do not rise above the speculative level, are not plausible, and fail to state a claim upon which relief can be granted.

Defendant DeFleur's motion to dismiss the First Cause of Action is granted. In all other respects, Defendants' motion to dismiss the First Cause of Action is denied.

### b.    Statute of Limitations

Defendants next argue that any claims arising out of events that transpired in the summers of 2003 and 2004 are barred by the three-year statute of limitations applicable to claims under § 1983. Plaintiff concedes that such claims are time-barred, but were included merely to provide "a history of such discriminatory events." Pl's Mem. of Law at 3. Accordingly, any discrete claims of discrimination occurring more than three years prior to the commencement of this action are barred.

### c.    42 U.S.C. § 1981

Defendants move to dismiss Plaintiff's claims under 42 U.S.C. § 1981 on the ground that the Complaint fails to allege an intent to discriminate on account of Plaintiff's race. For the reasons stated in connection with the analysis of the discrimination claims brought under 42 U.S.C. § 1983, the Court finds that the Complaint adequately states a claim under § 1981. The elements of a § 1981 claim are: (1) plaintiff's membership in a racial

minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning the plaintiff's ability to make and enforce contracts, sue, be party to a suit, give evidence, or fully and equally enjoy the benefit of all laws and proceedings for the security of persons and property.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  Section 1981 also recognizes a cause of action for retaliation in response to the plaintiff's assertion of a right protected by § 1981.  Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998).  To establish a prima facie case of retaliation under § 1981, Plaintiff must show that (1) he was engaged in a protected activity, (2) Defendants were aware of his participation in the protected activity, (3) Defendants took adverse action against him, and (4) a causal connection existed between the protected activity and the adverse action.  See, e.g., Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (discussing the elements of retaliation under Title VII).

Here, Plaintiff's Complaint alleges that he filed litigation against Defendants, Defendants knew of the litigation, he was terminated from the doctoral program, and he was dismissed after filing a lawsuit against Defendants.  These allegations, if true, sufficiently put Defendants on notice of the claim, the grounds for the claim, and render the claim legally plausible.  Again, whether Plaintiff's allegations are true, whether there is evidence supporting Plaintiff's allegations, whether his prior litigation was protected by § 1981, and whether there is a causal connection between the prior litigation and his dismissal from the University are best determined at trial or on a summary judgment motion.  Accordingly, the motion to dismiss this claim is denied.

Defendants next claim that Plaintiff fails to allege how any of the named Defendants were personally involved in a violation of § 1981.  Neither the Amended

Complaint nor Plaintiff's opposition shed much light on this issue. Fairly read, however, the Amended Complaint suggests that Defendants Eisch, Jones, Lees, and Doetschman were involved in the dismissal process. There are insufficient allegations in this regard concerning Defendant DeFleur. Accordingly, the § 1981 claim is dismissed as to Defendant DeFleur.

### d.      42 U.S.C. § 1982

Defendants move to dismiss Plaintiff's claims under 42 U.S.C. § 1982 on the ground that Plaintiff makes no allegation of discrimination in connection with real or personal property rights. Plaintiff has not responded to this claim, thereby indicating his consent to the relief granted. N.D.N.Y.L.R. 7.1(b)(3).

In any event, upon review of the Complaint, the Court finds that Plaintiff fails to state a claim for a violation of 42 U.S.C. § 1982. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The Amended Complaint makes no claim that Defendants prevented Plaintiff from inheriting, purchasing, leasing, selling, holding, or conveying property. Accordingly, this claim is dismissed.

### e.      20 U.S.C. § 1681(a)

Defendants move to dismiss Plaintiff's claim pursuant to 20 U.S.C. § 1681(a) on the ground that Plaintiff makes no allegation of gender-based discrimination. Plaintiff has not responded to this claim, thereby indicating his consent to the relief granted. N.D.N.Y.L.R. 7.1(b)(3).

In any event, upon review of the Complaint, the Court finds that Plaintiff fails to state a claim for a violation of 20 U.S.C. § 1681(a). That section provides that "[n]o person in

the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." The Amended Complaint makes no claim that Defendants acted on account of Plaintiff's gender. Accordingly, this claim is dismissed.

### f. Due Process

Defendants next move to dismiss Plaintiff's due process claims on the ground that he is not entitled to a pre-deprivation hearing prior to academic dismissal. While Defendants are correct that academic dismissals are not subject to pre-deprivation hearings, a due process interest is implicated where it is contended that the dismissal was motivated by bad faith or ill will unrelated to academic performance. Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Here, Plaintiff claims that he was terminated not for academic reasons, but for improper motives, including reasons relating to his race and national origin. Because Plaintiff alleges facts supporting an inference that Defendants were motivated by ill will, rather than academic performance, in dismissing him, he has stated a valid procedural due process claim. Id; see also Oladokun v. Ryan, 2007 WL 3125317, at *4 (S.D.N.Y. 2007).

Plaintiff's substantive due process claim must, however, be dismissed. "The Due Process Clause . . . 'does not transform every tort committed by a state actor into a constitutional violation.'" Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007) (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 202 (1989). Substantive due process applies only to a narrow range of extreme acts that can be said to be "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Lombardi, 485 F.3d at 79 (quoting Penal v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005). The conduct at issue "must be truly 'brutal and offensive to human dignity.'"

Lombardi, 485 F.3d at 81 (quoting Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002)). Although the Amended Complaint alleges that Defendants acted to intentionally harm Plaintiff, the allegations in the Amended Complaint simply fail to rise to the level of behavior necessary to sustain a substantive due process claim.

Defendants also claim that Plaintiff fails to sufficiently allege personal involvement. Plaintiff's Amended Complaint is less than clear as to who is claimed to be involved in this procedural due process violation. The Court finds that there are inadequate allegations of personal involvement as to Defendant DeFleur. There are no factual allegations tending to suggest that DeFleur was involved in the dismissal process. Accordingly, the due process claims are dismissed as to her. The Court finds that a fair reading of the Amended Complaint suggests that the remaining named Defendants may have been sufficiently involved in the dismissal process such that claims are validly asserted against them. If, after discovery, there is evidence suggesting that the remaining Defendants in this Court were not personally involved, then Defendants may move for summary judgment on this issue.

### g. Qualified Immunity

Defendants next move for dismissal of the constitutional claims on the ground of qualified immunity. As discussed, the allegations in the Amended Complaint give rise to claims of discrimination and due process violations against certain Defendants. To the extent the Amended Complaint states valid claims against these Defendants, they are not entitled to qualified immunity because it was well-settled at all times relevant hereto that it was unlawful to intentionally discriminate against someone on account of their race or national origin. It also was well-settled that a due process interest is implicated where academic dismissal is motivated by bad faith or ill will unrelated to academic performance.

Further, it is not objectively reasonable to discriminate against someone on account of their race or national origin or to terminate them from an academic program for reasons unrelated to academic performance. The motion to dismiss on grounds of qualified immunity is, therefore, denied.

### h. Copyright Infringement

Defendants next seek dismissal of Plaintiff's copyright claim. This motion is granted, albeit on grounds other than those raised by Defendants. The Court has an independent obligation to ensure it has subject matter jurisdiction over claims brought before it and may do so sua sponte. Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 250 (2d Cir. 2008). The Copyright Act "regulates a district court's authority to adjudicate a copyright claim." In re Literary Works in Electronic Databases Copyright Litigation, 509 F.3d 116, 121 (2d Cir. 2007). Pursuant to 17 U.S.C. § 411(a), "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Based on this statute, it is well-settled that, "[a]lthough a copyright need not have been registered in all cases before it may be infringed, the owner of that copyright must register the copyright before a federal court can entertain an infringement suit." Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1285 (11th Cir. 2000); see also Morris v. Business Concepts, Inc., 259 F.3d 65, 68 (2d Cir. 2001). The Second Circuit has explicitly held that "section 411(a)'s registration requirement limits a district court's subject matter jurisdiction to claims arising from registered copyrights only." In re Literary Works in Electronic Databases Copyright Litigation, 509 F.3d at 122. Thus, "[t]he registration requirement is a jurisdictional prerequisite to an infringement suit." M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990).

Here, the Amended Complaint makes no claim that Plaintiff registered his works. Plaintiff has, therefore, failed to demonstrate that the Court has subject matter jurisdiction over his copyright infringement claim. Accordingly, that claim is dismissed.

### i.   Patent Infringement

Defendants move to dismiss Plaintiff's patent infringement claim. Only a "patentee" is entitled to bring a civil action for infringement of the patent. Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007); see also 35 U.S.C. § 281. A "patentee" "includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100. This claim must be dismissed because Plaintiff fails to allege a patent was issued to him or that he otherwise has the right to bring a patent claim on behalf of someone who does own a patent. See Kunkel v. Topmaster Intern., Inc., 906 F.2d 693, 695 (Fed. Cir. 1990) (requiring the plaintiff to plead ownership of a patent still in force); see also Fed. R. Civ. P. Form 18 (requiring the complaint to include an allegation that the plaintiff owns the patent).

### j.   Breach of Implied Contract

Defendant next moves to dismiss the breach of implied contract claim on the ground that there is no plausible claim that any of the individual Defendants were parties to an implied contract with Plaintiff. Plaintiff responds that an implied contract was created by virtue of Binghamton University manuals and representations made by Defendants, but that he cannot specify what specific clauses were breached because "of the secrecy of Defendants and other school personnel." Am. Compl. at ¶ 72.

Any claims of breach of implied contract against the individual Defendants are dismissed for failure to state a claim. There are no facts or plausible allegations that any of

the individual Defendants, agents and/or employees of Binghamton University, personally entered into a contractual relationship with Plaintiff. Rather, any contractual relationship that existed was between Plaintiff and Binghamton University.

To the extent Plaintiff seeks breach of implied contract damages against Binghamton University through his allegations against the individuals acting in their official capacities, they must be dismissed. The official capacity claims are, in actuality, claims against Binghamton University itself. Binghamton University is an "arm of the state" and, therefore, a claim for monetary damages against it is barred by the Eleventh Amendment. See Clissuras v. City Univ. of New York, 359 F.3d 79, 83 (2d Cir. 2004); Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Dube v. State University of New York, 900 F.2d 587, 594-95 (2d Cir. 1990); see also Sank v. City Univ. of New York, 112 Fed. Appx. 761 (2d Cir. 2004); Acquaah v. State Univ. of New York Health Sciences Center at Brooklyn, 199 F.3d 1321 (2d Cir. 1999). Inasmuch as Plaintiff's sixth cause of action fails to state a claim against the individual defendants, does not seek to enjoin conduct that violates the federal constitution, and his claim for money damages against the State of New York is barred by the Eleventh Amendment, the sixth cause of action is dismissed.

### k. Promissory Estoppel

Defendants moves to dismiss Plaintiff's promissory estoppel claim (the seventh cause of action) on the ground that Plaintiff fails to allege a clear and unequivocal promise upon which Plaintiff reasonably relied to his detriment. Plaintiff's Amended Complaint alleges that he reasonably relied on Eisch's promises that Plaintiff would be able to defend

his dissertation in December 2005, that obtaining publication would not be hard, and that he would expedite Plaintiff's doctoral studies as much as possible.

This cause of action fails to state a claim upon which relief can be granted. The elements of a promissory estoppel claim are: (1) a clear and unambiguous oral promise; (2) reasonable reliance upon the promise; and (3) injury caused by the reliance. New York City Health and Hosps. Corp. v. St. Barnabas Hosp., 10 A.D.3d 489, 491 (1st Dept. 2004). Plaintiff's Complaint fails to identify any clear and unambiguous promises upon which he reasonably relied. Any statements that (i) obtaining publication would not be difficult; (ii) Eisch "would expedite the Plaintiff's doctoral studies as expeditiously as possible"; or (iii) Plaintiff could defend his dissertation in December 2005, are not clear and unambiguous promises. To the extent that Eisch's statement that Plaintiff could defend his dissertation in December 2005 can be construed to be a clear and unambiguous promise, Plaintiff did not reasonably rely on that promise. Plaintiff reasonably knew, or should have know, that his ability to defend his dissertation in December 2005 could not be guaranteed, but would depend on issues including his academic performance. Indeed, Plaintiff was never promised that he would receive his doctoral degree. Lastly, Plaintiff does not identify any injury caused by the reliance. Accordingly, this claim is dismissed.

> I.  **Educational Malpractice**

Defendants move to dismiss the educational malpractice claim on the ground that New York does not recognize any such cause of action. Defendants are correct that New York does not recognize such a claim. Torres v. Little Flower Children's Servs., 64 N.Y.2d 119 (1984); Simons v. Lycee Francais de New York, 47 A.D.3d 416, 850 N.Y.S.2d 23 (1st Dep't 2008); Alligood v. County of Erie, 299 A.D.2d 840 (4th Dep't 2002). Citing Baldridge v.

State, 293 A.D.2d 941 (3d Dep't 2002), Plaintiff responds that an educational malpractice action is properly considered through the "back door" under a breach of contract analysis is incorrect.

Plaintiff's educational malpractice claim must be dismissed. New York's policy of precluding educational malpractice claims may not be circumvented by couching the claim in terms of some other cause of action. Alligood, 299 A.D.2d at 840 ("The essence of both the breach of contract and breach of fiduciary duty causes of action is that plaintiffs are entitled to money damages because of defendants' educational malpractice. There is, however, no cognizable cause of action in New York for educational malpractice."). To the extent Plaintiff is attempting to re-assert a breach of contract claim against the University as described in Baldridge, for the reasons previously discussed, such a claim is barred by the Eleventh Amendment and Plaintiff has no such contractual relationship with the individual defendants. This claim is, therefore, dismissed.

  **m. Fraud**

Defendants next seek dismissal of Plaintiff's fraud claim. Plaintiff's Amended Complaint alleges that Defendant Eisch "deceived Plaintiff" by indicating that he would expedite his doctorate, but undertook actions to prevent the award of the doctorate and "tricked" Plaintiff "out of his notebooks and surreptitiously appropriat[ed] Plaintiff's intellectual property rights." According to the Complaint, Defendants engaged in a scheme "to deprive Plaintiff authorship and/or ownership of his invention and . . . unjustly profit from the said invention." Am. Compl. at ¶¶ 88-92.

This claim, too, fails to state a claim upon which relief can be granted. The elements of a fraud claim are "representation of a material existing fact, falsity, scienter,

deception and injury." New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318 (1995). Of course, fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b). As previously discussed in connection with the promissory estoppel claim, Eisch's statement that he would expedite Plaintiff's doctoral program "as expeditiously as possible" is not a misrepresentation of a material existing fact. Plaintiff's fraud claim is simply a repackaged version of, and is subsumed by, his breach of contract claim whereby he contends that he fulfilled the requirements of the doctoral program, but Defendants refused to award him his degree. Accordingly, this claim is dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

   a.   Plaintiff's claim of race-based and national origin discrimination contained in his First Cause of Action is DISMISSED AS TO DEFENDANT DEFLEUR ONLY; in all other regards the motion to dismiss the discrimination claims is DENIED;

   b.   Plaintiff's claim pursuant to 42 U.S.C. § 1982 is DISMISSED (Second Cause of Action);

   c.   Plaintiff's claim pursuant to 20 U.S.C. § 1681 is DISMISSED (Second Cause of Action);

   d.   Plaintiff's claim pursuant to 42 U.S.C. § 1981 is DISMISSED AS TO DEFENDANT DEFLEUR; in all other regard, Defendants' motion to dismiss the § 1981 claim is DENIED (Second Cause of Action);

  e. Plantiff's procedural due process claim is DISMISSED AS TO DEFENDANT DEFLEUR; in all other regard, Defendants' motion to dismiss the procedural due process claim is DENIED (Third Cause of Action);

  f. Plaintiff's substantive due process claim is DISMISSED (Third Cause of Action);

  g. Plaintiff's copyright infringement claim is DISMISSED (Fourth Cause of Action);

  h. Plaintiff's patent infringement claim is DISMISSED (Fifth Cause of Action);

  i. Plaintiff's Breach of Implied Contract claim is DISMISSED (Sixth Cause of Action);

  j. Plaintiff's Promissory Estoppel claim is DISMISSED (Seventh Cause of Action);

  k. Plaintiff's Educational Malpractice claim is DISMISSED (Eighth Cause of Action); and

  l. Plaintiff's Fraud claim is DISMISSED (Ninth Cause of Action).

IT IS SO ORDERED.

Dated: October 16, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge